IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

VICKI MERCK,                              )
                                         )
          Plaintiff,                     )      TC-MD 130358C
                                         )
     v.                                  )
                                         )
DEPARTMENT OF REVENUE,                    )
State of Oregon,                         )
                                         )
          Defendant.                     )      **FINAL DECISION**

The court entered its Decision in the above-entitled matter on February 5, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff has appealed from a Notice of Assessment issued by Defendant February 26, 2013, denying a casualty theft loss reported by Plaintiff on her 2010 Oregon income tax return.[1] Trial in the matter was held December 2, 2013, at the Oregon Tax Court, in Salem, Oregon. Plaintiff was represented by Janet Morton, an Oregon licensed tax consultant. Defendant was represented by John Koehnke, auditor, Oregon Department of Revenue. Plaintiff's Exhibits 1 through 5 and 8 were admitted without objection. Defendant's Exhibits A through C were admitted without objection.

/ / /

/ / /

---

[1] Plaintiff actually reported the casualty loss on her 2010 federal income tax return, Schedule A, which serves to reduce taxable income (assuming the amount reported on Schedule A exceeds the standard deduction in any given year). (Def's Ex A at 5.) That loss carried through to Plaintiff's state income return because Oregon uses a taxpayer's federal adjusted gross income as the starting point for calculation of state tax liability. ORS 316.007(3); ORS 316.022(6); ORS 316.013.

## I.  STATEMENT OF FACTS

Plaintiff reported casualty theft losses from two separate events that allegedly occurred in June and September 2010.  Plaintiff reported a total loss of $28,904 and a net reportable loss of $20,828.  (Def's Ex A at 5, 6.)  Plaintiff's reported her loss on federal form 4684, "Casualties and Thefts."

The testimony adduced at trial was that Plaintiff at one time lived in her mother's home in Salem.  Plaintiff was living with her mother because her mother had poor health.  Plaintiff moved from Salem to Junction City in 2009 because her mother's health had improved.  Plaintiff returned from Junction City to Salem in April 2010 because the health of her mother, who lived in Salem, had deteriorated.  Plaintiff testified that she purchased a home in Salem in April 2010.

Plaintiff had a daughter and boyfriend living with her when she returned to Salem in April 2010.  However, Plaintiff testified that she discovered that her daughter's boyfriend had stolen a piece of jewelry and used her debit card without permission, so she "kicked them out" in July 2010.

Subsequently, in September 2010, Plaintiff had a friend living in the Central Oregon area who wanted to move back to Salem.  Plaintiff traveled to her friend's house for approximately five days on or about September 20, 2010 to help her friend sell some of her belongings in a garage sale and to pack up the remainder of her personal property and move to Salem.  Plaintiff testified that she returned on or about September 25, 2010.  Plaintiff testified she had "relatives" stay in her home while she was at her friend's house in central Oregon because she did not have a security system and was concerned that her daughter's boyfriend might break into the home and steal some of her other belongings.  A police report, discussed below, indicates that Plaintiff

/ / /

told a police officer that her daughter Crystal Fouck and nephew Marquis Smith (Smith) had been staying in the home during her absence in September. (Ptf's Ex 1.0, 1.3.)

Plaintiff testified that, shortly after returning from Central Oregon, she was moving things in her closet and lifted a box that had contained a laptop computer she owned and realized that the box seemed unusually light. Plaintiff testified that she opened the box and discovered that the laptop computer was missing. Sometime thereafter, Plaintiff went looking for other valuables, primarily jewelry, that she feared might also be missing. Plaintiff testified that the jewelry she was concerned about was stored in a box in her garage because she had not gotten around to moving those belongings into her home after moving back to Salem from Junction City. Plaintiff discovered that the jewelry she was concerned about had been stolen. Some of the jewelry was quite old. Plaintiff reports the "age" of certain pieces to be 21 years, 58 years, and 75 years old. (*Id*. at 2.4.)

When Plaintiff discovered the second theft in September 2010, she contacted the police and filed a police report on or about September 25, 2010. (Ptf's Ex 1) That "Crime/Incident Report" indicates that a theft occurred sometime between September 13, 2010 and September 24, 2010. (*Id*. at 1.0.) In the police report, Plaintiff lists 59 stolen items, although some of the listed items include more than one object (*e.g.*, coins, steaks). (*Id*. at 1.8, 1.9.) The list has very detailed descriptions of the items stolen (*e.g.*, "1 Ct. Emerald cut Sapphire engagement with round cut diamonds"). (*Id*. at 1.6.) The police report further indicates that among the items stolen were a 1 carat emerald engagement ring valued at $2,500, a ring with 21 one-quarter carat diamonds valued at $2,500, an antique diamond engagement ring valued at $3,500, an antique wedding band valued at $1,980, a "pear shape pendant with 16 round cut diamonds" that Plaintiff estimates had a value of $3,500, a pair of earrings valued at $990, two gold chains

valued at $475 and $465, and an H-P laptop computer Plaintiff values at $700. (*Id*. at 1.6, 1.7) Additional items stolen include a digital camera, vintage coins, a saw and saw blades, a computer-related blue tooth device, and some steaks. (*Id*. at 1.1-1.2.)

The police report indicates that Plaintiff told the police officer that she believed that her nephew Smith may have taken the stolen items. (*Id*. at 1.3.) Plaintiff's suspicion was based on her observation that he "ha[d] changed lately" and her belief that Smith had developed a drug addiction. (*Id*.) However, Plaintiff reported to the police that when she confronted Smith, he denied taking anything from her home. (*Id*.)

Plaintiff testified that she estimated the value of the stolen items using a combination of Internet research and visiting the jewelry stores and talking with the jewelers about the value of the alleged missing items. The narrative portion of the police report filed after the September 2010 theft indicates that Plaintiff told the police officer "she placed her jewelry, which included several rings, necklaces, and ear rings of various styles and with different stones from diamonds to pearls and sapphires, into a ziplock style bag. She then buried the bag of jewelry in her closet under several items to include a box which had her Hewlett Packard laptop inside it." (*Id*.) That information conflicts with Plaintiff's trial testimony, which was that the jewelry was stored in a box in her garage. Plaintiff's evidence includes photocopies of four pieces of jewelry. (*Id*. at 1.10-1.13.) There was no testimony about those items.

Plaintiff filed an insurance claim in February 2011. Plaintiff's insurance claim lists 58 items of stolen property including jewelry, a computer, coins, computer equipment, a digital camera, a variable speed saw, a purse, and 75 steaks. (*Id*. at 2.4-2.9. The total estimated replacement cost of the items stolen is $29,472.47. (*Id*. at 2.9.) That list is more detailed than the list in the police report, and includes the age of each item (presumably the original

acquisition date). (*Id*. at 2.4-2.9.) Plaintiff was reimbursed $3,252.01 by the insurance company. (*Id*. at 2.0.) The insurance company's reimbursement was apparently limited by the scope of coverage provided by the policy.[2]

For purposes of determining the cost basis of those items, Plaintiff's representative Morton researched the amount by which the component parts of the jewelry (gold, silver, diamonds, emeralds, etc.) had appreciated over the years and then subtracted the amount of appreciation from Plaintiff's estimation of the then-current replacement value of the jewelry and other items in 2010. Plaintiff and her representative acknowledged that they did not factor in the size of a given diamond or other precious stone, or whether the general rise in the value of gold or silver, etc., paralleled the market's reaction to jewelry made out of those materials.

Plaintiff testified that most of the stolen jewelry was given to her by her mother in 2010, but that she had owned approximately 25 pieces of jewelry prior to receiving a substantial amount of jewelry from her mother in 2010. Plaintiff testified that she acquired the other jewelry (the items not given her by her mother in 2010) from prior marriages and gifts from family members, etc.

Plaintiff's reported 2010 federal adjusted gross income (AGI) is $59,240. (Def's Ex A at 1, 3.) Plaintiff filed a Form 4684 reporting a cost or other basis of $28,904 for the theft loss items, and insurance reimbursement of $3,252. (*Id*. at 6.) Deducting the insurance reimbursement, and subtracting the $100 amount required by the federal tax code (see below), Plaintiff reported a theft loss of $25,552. (*Id*.) Plaintiff did not include the required 10 percent of AGI figure on her Form 4684, or report the amount of loss exceeding 10 percent of AGI, as

/ / /

---

[2] The insurance company's claim letter indicates that the replacement cost value of the items stolen was $29,472.47, but that $24,651.52 was over the "limit." (Ptf's Ex 2.0.)

required on Form 4684, lines 19 and 20. (*Id*.) Plaintiff did subtract the 10 percent when reporting the theft loss on line 20 of her Federal Schedule A. (Def's Ex A at 5.)

## II. ANALYSIS

Oregon law follows the federal Internal Revenue Code for matters such as theft losses. *See* ORS 316.007; ORS 316.012.[3] For guidance on matters of federal income tax law, the court looks to the interpretations given by federal courts and by the United States Commissioner of Internal Revenue. *See* ORS 314.011(3).

The party seeking affirmative relief from this court bears the burden of proof and must establish his or her case by a "preponderance" of the evidence. ORS 305.427 (2011). "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citing *McPherson v. Cochran*, 243 Or 399, 404, 414 P2d 321 (1966)). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

Internal Revenue Code (IRC) section 165(a) provides generally for a deduction for losses "not compensated for by insurance or otherwise," and section (c)(3) of IRC section 165 provides that individuals may deduct "losses of property * * * from fire, storm, shipwreck, or other casualty, *or from theft*." (Emphasis added.)[4]

The amount of loss that may be deducted is limited as follows: only the amount of the loss "arising from each * * * theft" that exceeds $100, per IRC section 165(h)(1), and per subsection (h)(2)(A) of IRC section 165, "only to the extent * * * such excess [of loss over gain]

---

[3] Unless noted otherwise, the court's references to the Oregon Revised Statutes (ORS) are to 2009.

[4] References to the Internal Revenue Code (IRC) are to the 1986 Act, as subsequently amended by Congress.

as exceeds 10 percent of the adjusted gross income of the individual." Plaintiff's adjusted gross income is $59,240. (Def's Ex A at 1, 3.) Ten percent of that amount is $5,924. Finally, the code regulations limit the allowable deduction to the lesser of the fair market value of the property immediately before the theft reduced by the fair market value of the property immediately after the theft and the adjusted basis of the property. Treas Reg 1.165-7(b). Basis for items such as gifted jewelry is generally the cost to the donor at the time of the donor's acquisition. IRC § 1015(a); Treas Reg 1.1015-1(c).

Among the determinations the court must make are whether Plaintiff owned the items allegedly stolen and whether a theft, in fact, occurred.

The court concludes Plaintiff did own the jewelry and other items reported as stolen. The testimony was persuasive and documentary evidence convincing. Plaintiff acquired some of the items over time and was given many of the others by her ill mother for whom she provided care and comfort, moving back to town to be near her mother and help care for her.

As for the taking, the first theft involved only one or two items, and there is no evidence Plaintiff reported the matter to the police. However, the second theft was much larger in scope and Plaintiff reported the theft to the Salem police on or about the day she discovered the items missing. Plaintiff implicated her nephew, and possibly her daughter, as the perpetrators of that crime. That suggests to the court that a theft did, in fact, occur. Moreover, several months later, Plaintiff filed a claim of loss with her insurance company. Both reports provided detailed information about the items stolen. The items reported in the insurance claim closely match the items reported to the police as having been stolen, although the insurance company list is more detailed. Plaintiff testified that she reported the loss on her income tax returns based on the advice (or at least suggestion) of a representative from her insurance company.

It would admittedly be helpful if Plaintiff had photographs of each item stolen, and appraisals of the more valuable pieces of jewelry. However, neither the code nor the regulations require that level of proof. The court's standard is a preponderance; is it more likely than not that Plaintiff owned the jewelry and other items reported as stolen, and that they were, indeed, taken? The court finds Plaintiff has met her burden of proving ownership and loss. Plaintiff in this case did not come into possession of the majority of the jewelry until sometime in 2010, only months before it was taken. The items were gifted to Plaintiff by her mother for whom she had been caring. That gave Plaintiff little time to have the property valued. And, Plaintiff had only recently moved to Salem from Junction City. That move further complicated Plaintiff's life.

Additionally, Defendant's representative testified at trial that he did not question that Plaintiff had suffered a theft loss, but argued that Defendant did not feel Plaintiff has established entitlement to the deduction, and therefore requested that the court uphold its disallowance of the entire amount of the deduction. That acknowledgement by Defendant buttresses the court's finding and conclusion that Plaintiff owned the jewelry and other items in question, and that there was a theft.

The court finds enough credible evidence to establish that Plaintiff had some items taken from her while she was out of town and had others staying in her home. However, the more difficult matter is establishing the allowable amount of the deduction for the items stolen. The code regulations limit the deduction to the lesser of the fair market value of the property before the theft reduced by the fair market value of the property immediately after the theft and the adjusted basis of the property. Treas Reg 1.165-7(b).

Plaintiff's method for determining both the basis and fair market value is inexact; Plaintiff estimated the present (2010) fair market value by searching the Internet and obtaining

estimates from jewelers, and her representative estimated the basis by reducing Plaintiff's current value estimates by the amount of appreciation of the component parts of the jewelry (gold, silver, diamonds, etc.), some of which are 50 to 75 years old (*i.e.*, reverse appreciation). Morton obtained that information by Internet research and acknowledged on cross-examination that she could not be certain that, say, a gold ring increased in value at the same rate the price of gold appreciated. It is not clear whether Plaintiff's numbers present the fair market value immediately before the theft or the replacement cost, and there are no documents for the court to scrutinize. And, Morton's method for estimating basis is even less reliable, if it has any merit at all.

The United States Tax Court has, on occasion, found it appropriate to "approximate" the taxpayer's basis by application of its "best judgment," based on *Cohan v. Commissioner*, 39 F2d 540 (2d Cir 1930). *Adel v. Commissioner (Adel)*, TC Summ Op 2008-65, WL 2356830 at *4 (1980). *Adel* involved a jewelry theft loss, but in that case the taxpayer had cost information and an appraisal. Plaintiff in this case did not provide the court with such information or anything approximating that type of information. Accordingly, the court in this case does not find the approach relied on by the US Tax Court in *Adel* helpful because of the nature of the value evidence provided. Any attempt at an approximation of basis or fair market value would be no more than a guess.

## III. CONCLUSION

The court concludes that Plaintiff owned the jewelry and other items of personal property that were stolen from her in 2010. However, the evidence is not sufficient for the court to establish the amount of any deduction otherwise allowed under Internal Revenue Code section 165, as explained above. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of February 2014.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on February 24, 2014. The court filed and entered this document on February 24, 2014.*

FINAL DECISION TC-MD 130358C
10